TORRES, PETITIONER AND APPELLEE, *v.* CAPESTANI, RESPONDENT AND APPELLANT.

### APPEAL from the District Court of Guayama in Mandamus Proceedings.

No. 2566.—Decided June 9, 1922.

MANDAMUS—PLEADING—MUNICIPAL OFFICER—ELECTRIC CURRENT.—A petition for a writ of mandamus directed to the municipal officer in charge of the sale of electric current produced by the municipality is sufficient when it shows that the petitioner has complied with all of the requirements imposed by the municipality upon consumers and no reason appears therefrom for a refusal to furnish current to the petitioner.

ID.—ID.—ID.—ID.—INTERESTED PARTY.—Considering section 65 of the Municipal Law, a writ of mandamus lies to compel a municipal officer to provide a consumer with electric current when the officer in charge refuses to do so without any lawful reason; and where the petitioner has signed a contract as such consumer he is the real party in interest, although he may not be the owner of the building for which the current is to be furnished.

The facts are stated in the opinion.

*Mr. C. Domínguez Rubio* for the appellant.

*Mr. M. A. Martínez* for the appellee.

MR. JUSTICE ALDREY delivered the opinion of the court.

On July 13, 1921, Miguel Angel Torres filed in the District Court of Guayama a petition for a writ of mandamus against Rogelio Capestani, Municipal Commissioner of Public Works of the said municipality, alleging in substance that he was the owner of a cinematograph enterprise operating in the Bernardini Theatre in the said city; that the respondent is the Commissioner of Public Works of Guayama and as such, in accordance with an ordinance approved by the Municipal Assembly regulating the sale of electric current produced in the municipal plant of the city of Guayama, has under his management and control the said electric plant which he manages and operates as a public utility under a franchise granted by the municipality; that the petitioner is a consumer of that electric current for lighting the theatre and operating a cinematograph therein; that for more than four years that theatre has been consuming elecric current supplied by

the municipality and has an electrical installation which has been working regularly; that on the 1st of July, 1921, when the ten days allowed by the ordinance for paying for the current used during the previous month had not expired, the respondent, by his employees and without previous notice, cut off the electric current that was being supplied to the theatre of the petitioner for lighting purposes; that on the following day the petitioner was informed at the city hall that the reason for this was that the contract had expired on June 30, and, having stated his desire to enter into a new contract, it was immediately prepared and signed by the petitioner and the proper municipal officials; the petitioner having complied with all of the requirements provided for in the ordinance and given the bond required for turning on the current; that after he had signed the contract as a consumer and it had been accepted by the proper municipal officials he requested the respondent, as Municipal Commissioner of Public Works, to supply the electric current, but he refused to do so without giving any good reason; that he gave cinematographic performances in the said theatre every night and that was his only business; that by the act of the respondent he was prevented from giving such performance and has suffered damages in the sum specified, and that when the contract was signed the respondent was under the obligation to supply the electric current, which was within his powers and duties. For the reasons stated the petitioner prayed the court to issue a peremptory writ commanding the respondent to supply him with the electric current and pay him a certain sum of money for the damages that he had sustained.

The respondent opposed the petition for a writ of mandamus, alleging fundamentally that it did not state facts sufficient to constitute a cause of action and that he was under no obligation to supply electric current to the petitioner because the installation of the Bernardini Theatre was defec-

tive and dangerous to the public; but after the evidence was examined, the petitioner offering none concerning the damages claimed, judgment was rendered against the respondent; ordering him peremptorily to supply the electric current to the petitioner. From that judgment the respondent took the present appeal.

The three principal assignments of error made by the appellant refer to the insufficiency of the allegations of the petition to constitute a cause of action, and the last assignment refers to the insufficiency of the evidence to support the judgment. These are the only assignments that we shall consider, for although two other assignments are made to the effect that the petition is ambiguous and that certain portions of it should be stricken out, they are of no importance after considering the evidence, apart from the fact that they are not properly made.

The petition was sufficient because it was alleged therein that the municipality of Guayama has a franchise for an electric plant; that it sells electric current to the public by contract; that the respondent is the person in charge of said service; that the petitioner entered into a contract for the supply of electric current, the contract being signed by him and by the Municipal Commissioners of Public Works and Finance; that the petitioner gave the bond required; that these are all of requisites necessary under an ordinance of the municipality for supplying the electric current, and that the theatre to be lighted had an electrical installation which had been operating regularly for four years prior thereto, and if these allegations were true, there is no doubt that the petitioner had a right to be furnished with electric current and that his petition states facts sufficient to constitute a cause of action, for it appears therefrom that he has complied with all of the requirements imposed by the municipality to entitle him to be furnished with the electric current and no special reason is shown for his not being so supplied.

The appellant maintains also that the petition for a writ of mandamus does not lie because Torres has an ordinary remedy against the municipality as a corporation, but section 65 of the Municipal Law grants the writ of mandamus to compel municipal offices to comply with their duties and, according to the petition, the respondent, as the Municipal Commissioner of Public Works of the municipality of Guayama, is in charge of the electric service of the municipality. As regards the allegation that Torres is not the real party in interest because the theatre belongs to another person, it will suffice to say that he is the interested party because he signed the contract as consumer and is prejudiced by the failure to furnish him with the current.

Now let us examine the evidence. It shows the following: That the municipality of Guayama has a franchise for the operation of an electric plant and sells electric current to the public, the service being under the management of its Commissioner of Public Works and regulated by the ordinance of June 7, 1920. During some four years that electric current was used in the Bernardini Theatre in the said city, or until the 1st of July, 1921, at 6 P. M. when by order of the Commissioner of Public Works the supply of current to the said theatre was cut off, thus preventing Miguel Angel Torres from continuing his business of exhibiting moving pictures at night, as he had been doing for some two months before when he took charge of a similar business operated in that theatre by the partnership of Rivera, Vives, Torres & Company. On the following day Miguel Angel Torres went to the city hall to learn the reason why the current had been cut off, and when he was informed that the contract had expired on June 30th he asked for and was given a blank contract which he signed and which was signed also by the Commissioners of Public Works and Finance, and after having furnished the bond which was demanded of him he asked

to be supplied with the current, but no connection had been made on the date of the petition or on the day of the trial.

Section 10 of the ordinance referred to provides that every person who desires to be supplied with electric current shall make application to that effect to the Municipal Commissioner of Public Works and after the same is considered and approved by the respective municipal officials as therein provided, it shall serve as a contract between the municipality and the applicant. The contract must be approved by the Commissioners of Public Works and Finance and shall be in force until the 30th of June of each year, but it may be rescinded before that date at the request of the consumer. In this case as the printed contract was signed by Torres and the said two commissioners, and as the consumer gave the bond required by another section of the ordinance, all of the requirements were complied with and Torres had a right to be supplied with electric current, unless there was some special reason for refusing to do so. Something is said in the evidence of the respondent about whether the contract signed was the right one, but this was not set up as a defense in the answer and as it appears from the contract that it was entered into for the supply of electric current to the Bernardini Theatre, and as the printed contract was furnished by the official in charge of them, the petitioner can not be charged with not having signed the corresponding contract, if such was the fact, for it was not proved.

But the real issue between the parties was whether the electrical installation of the Bernardini Theatre was defective and dangerous and that for this reason the electric current could not be supplied. That was the principal question brought out in the evidence, because section 32 of the ordinance reserves to the municipality the right to discontinue the service without notice when, among other reasons, there is imminent danger in the installation of any consumer.

The petitioner testified that the installation had been carry-

ing the current furnished by the municipality for about four years. Charles Mock, the manager of the electric plant of Guayama, who was one of the witnesses for the petitioner, testified that on July 3, 1921, he examined the visible parts of the installation of the said theatre and concluded that it could continue in operation as it was without any danger, and that although the Underwriter system of installations is good, there is only one in this Island and that is in the Federal building. Lucas Pou, an electrician, testified that he put the installation in the Bernardini Theatre and had seen it on the day on which he was testifying, and that it was in good condition and offered no danger whatever; that he made the installation of two wires because it is just as safe as one of three wires; that a three-wire installation is rather to balance the system of distribution of the city, but is not necessary for the building.

The evidence of the respondent concerning the defectiveness and dangerous condition of the installation consisted of the testimony of Francisco Moya, superintendent of the electric light service of the municipality of Guayama, who testified that he had been an employee of the said municipality since January 10, 1921, and that before that time he had a moving picture show in that theatre until he was required to vacate it for the committees of the Unionist party; that since that time there were some defects in the installation; that at that time he took care to protect it as much as possible; that on account of the contract signed by Torres he made a slight inspection in the theatre and found certain things which he thought defective and dangerous to a certain extent, and for that reason he refused to order the connection to be made; that in a letter which he wrote to Torres on July 6, 1921, he informed him of these defects and the manner to correct them, one of them being that the installation should consist of three wires; that the installation is not according to the Underwriter system, and that sometimes he had seen

that when the fuses melted they were substituted by copper wire or a copper coin and thereupon the whole installation was impaired and the wires became heated. On this last point another witness, Santiago Baerga, testified that one night the cord of one of the dressing rooms of the theatre was burned.

The summary that we have made shows clearly that the evidence was contradictory as to whether the installation of the theatre was in a dangerous condition. The trial court adjusted this conflict against the respondent and we see no reason to interfere with that decision, especially as the preponderance of the evidence is undoubtedly in favor of the petitioner; therefore, as the installation was not a cause of imminent danger, the refusal to supply the petitioner with electric current could not be based on that averment. Besides, as it was not a new installation, it had not to be approved by the municipality, in accordance with section 27, before the current was turned on, and if it was defective, notice in writing should have been given to the consumer, according to section 28, stating the defects and the manner of correcting them and giving him a reasonable period of time within which to correct them, upon the expiration of which, if the defects were not corrected, he could be deprived of the service until the order should be complied with.

With regard to the statement that in that theatre they sometimes used copper wire or coins to replace the fuses when they melted, we need not consider that matter because Torres was not charged with such acts and the testimony referred rather to other previous managements.

The judgment appealed from must be

*Affirmed.*

Justices Wolf and Hutchison concurred.

Mr. Chief Justice Del Toro dissented.

Mr. Justice Franco Soto took no part in the decision of this case.